SEMPIER, Respondent, vs. GOEMANN and another, Appellants.

*January 16—February 13, 1917.*

Opening default: Discretion: Master and servant: Injury: Independent contractor: Unsafe appliances: Questions for jury: Evidence: Sufficiency: Competency: Principal and agent: Authority to hire servants: Appeal: Harmless errors.

1. An order opening a default and setting aside a verdict is *held* in this case not to have been an abuse of discretion.

2. While engaged with a crew of men in decking or piling logs in Michigan plaintiff was injured by the falling of a log which was prematurely released as it was being hoisted to the pile. One C. was in charge of the work under a contract with defendants pursuant to which he boarded and paid the men and was to be paid a certain sum per thousand; but evidence as to the control exercised by defendants over the piling crew and as to liability insurance procured by defendants covering such crew, together with certain admissions in the original answer, is *held* to sustain a finding by the jury that both plaintiff and C. were servants 'of the defendants at the time of the injury; and C. was therefore not such an independent contractor that defendants were relieved from liability to plaintiff under the Michigan rule on that subject, which seems to be substantially the same as the rule in this state.

3. The doctrine in Michigan as to the duty of the master with respect to the tools and appliances furnished for the use of his servants seems to be the same as in Wisconsin; and upon the evidence in this case it was a question for the jury whether such duty had been breached by defendants.

4. A finding by the jury that the proximate cause of the injury was negligence of defendants in failing to provide reasonably safe appliances in the so-called pup hooks which were used in raising the logs, is *held* to be sustained by the evidence.

5. A foreman of defendants, who first hired plaintiff and other men, having testified that he was not authorized to hire them for .defendants, it was perhaps error to permit plaintiff and another witness to testify that when the foreman employed them he said they were to work for defendants; but in view of the whole situation as shown by the other evidence it is *held* that such error was not material or sufficient to work a reversal.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Affirmed.*

The appeal is from a judgment in favor of plaintiff.

The plaintiff was injured while decking or piling logs at Cisco lake, Michigan, in February, 1914. The defendants had a general logging contract to take out and pile these logs. The so-called decking operation was done by the use of a V-shaped frame about twenty feet high resting on another frame, the point of the V upwards, with a pulley at the top and another at the bottom. A rope through these pulleys was attached to the center of a cable a little over sixteen feet long, and on each end of the cable there was a pointed iron hook with a guiding rope. These hooks or "pups," as they are called, would be placed in the ends of the log proposed to be placed on the pile. A team attached to the other end of the rope would pull it through the two pulleys, and the consequent strain on the cable would tighten the hold of the hooks and raise the log to the desired height. The plaintiff as "top" man on the pile would signal the driver of the team when to stop, would see that the log was in proper place on the pile, and then on his signal the men holding the ropes attached to the hooks or pups would pull on them, thereby releasing the log.

At the time in question a log being raised was prematurely released and swung so as to knock plaintiff to the ground and fell on him, causing severe injury.

The summons and complaint were served on defendant *Clark* in April, 1914, and on defendant *Goemann* May 2, 1914. These defendants turned these papers so served over to an agent of the Royal Indemnity Insurance Company and claim to have received and relied upon the assurance of such agent that the insurance company would look after the matter and defend the lawsuit if necessary. Plaintiff's attorney wrote defendant *Goemann* on June 3d calling attention to the service and that the time for answering had expired, but no answer to such letter was received. A personal interview was had between defendant *Goemann* and plaintiff's counsel and the agent of the insurance company on or about July 6th,

at which time the situation was discussed.   Nothing further
was done until October 16, 1914, when, upon affidavit of de-
fault, a verdict upon a hearing then had was returned against
the defendants in the circuit court for the sum of $1,950.

 . The defendants, learning of this verdict through a news-
paper account, immediately consulted counsel, and an appli-
cation was made to the court to have the proceedings opened
and they be allowed to defend.   On such application the de-
fendant *Goemann* made an affidavit reciting, among other
things, that he had fully and fairly stated all the facts and
circumstances connected with said injury to his counsel.   The
verified answer attached to these affidavits contained the fol-
lowing: "Admits that the plaintiff was employed by the de-
fendants; admits that the plaintiff was injured while in the
employ of the defendants."

An additional affidavit was made by *Goemann* a few days
later in which he stated that since making the answer, above
referred to he was informed by defendant *Clark* that plaintiff
had been discharged by *Clark* a few days before the accident
and was then working for one James Cherf, who, it was al-
leged, was an independent contractor over whom defendants
had no control.   The amended answer contained neither of
the admissions of the original answer quoted above, and al-
leged that at the time of the injury plaintiff was not in their
employment but in that of said James Cherf.

Upon the trial a special verdict was found to the effect that
the proximate cause of plaintiff's injury was a want of ordi-
nary care of defendants in failing to provide reasonably safe
appliances in the so-called pup hooks.   That the co-employees
did not fail in ordinary care in attaching the pup hooks to
the log that fell.   That the plaintiff and said Cherf were
each a servant of the defendants at the time of the injury.
That $1,800 would compensate plaintiff for his injury.   Af-
ter motion by each party after verdict the court ordered judg-
ment upon the verdict for plaintiff, from which judgment

defendants appealed. The respondent on this appeal gave the notice provided for by sec. 3049a, Stats. 1915, and asked to have reviewed the order opening defendants' default and setting aside the verdict found by the first jury.

For the appellants there were briefs by *Kittell & Burke* of Green Bay, and oral argument by *John A. Kittell.*

*Lynn D. Jaseph* of Green Bay, for the respondent.

ESCHWEILER, J.  Upon the respondent's application to review the order of the court below in opening the default, we are satisfied that in so doing the court acted well within the field of judicial discretion and therefore respondent's request must be denied.

On defendants' appeal it is urged in substance that the record established as a matter of law that at the time of the injury plaintiff was employed by an independent contractor, James Cherf; that no actionable negligence was shown or found by the jury; and that the court improperly admitted evidence as to statements made by one Thompson, alleged to be defendants' agent, at the time that the plaintiff was hired.

The plaintiff alleged and proved certain provisions of the workmen's compensation act of Michigan, the state in which the accident occurred, and that defendants had not elected to be and therefore were not subject to its provisions as to compensation. The effect of that act is substantially the same as ours and prevents defendants from relying upon any defense based upon the negligence of the employee himself or of a fellow-employee, or upon the assumption of the risk incident to his employment or from failure of the employer to provide safe premises and suitable appliances. Defendants also offered in evidence certain decisions of the supreme court of Michigan to determine the question of whether or not James Cherf was such an independent contractor as to make him and not defendants liable for the injury to plaintiff. The following cases, viz.: *McClure v. D. S. R. Co.* 146

Mich. 457, 109 N. W. 847; *McBride v. Jerry Madden S. Co.*
173 Mich. 248, 138 N. W. 1077; *Samuelson v. Cleveland I.
M. Co.* 49 Mich. 164, 13 N. W. 499, which were so offered
by defendants, and also *De Forrest v. Wright,* 2 Mich. 368;
*Riedel v. Moran, Fitzsimons Co.* 103 Mich. 262, 61 N. W.
509; *Burns v. Michigan P. Co.* 152 Mich. 613, 116 N. W.
182; *Rogers v. Parker,* 159 Mich. 278, 123 N. W. 1109;
*Bacon v. Candler,* 181 Mich. 372, 148 N. W. 194, disclose
no substantial difference between the rule in that state and
the rule here as to such relationship, as indicated in *Madix
v. Hochgreve B. Co.* 154 Wis. 448, 452, 143 N. W. 189.

In the case at bar, while it is true that the uncontradicted
evidence shows that there was an oral contract between de-
fendants and Cherf by which he was to have charge of the
work of piling the logs, board and pay the men while so do-
ing, and was to be paid at sixty-five cents per thousand, which
fact is of considerable weight but not necessarily controlling,
yet there was evidence tending to show that defendants did
exercise some species of control over the men by shifting at
least one of them from the piling crew to work that was ad-
mittedly under the personal direction of defendants.  The
defendants procured liability insurance to cover all the men
employed on the entire work, including those working under
Cherf, although the proportionate share of such insurance ex-
pense appears to have been charged against Cherf by defend-
ants, but after the accident here involved.  The admissions
in the answer were also proper to be considered in this con-
nection.  There were, therefore, facts from which a jury
might legitimately draw the inference they did, that Cherf
was a servant of defendants under their control at all times
and that the arrangement as to compensation was for con-
venience only, and that therefore he was not such an indi-
pendent contractor as would relieve the defendants from lia-
bility under the Michigan authorities or those of this state.

The Michigan court has repeatedly defined the duty of the

master to the employee in regard to tools and appliances. It is said in *Wachsmuth v. Shaw E. C. Co.* 118 Mich. 275, 76 N. W. 497, as follows:

"It is now well settled the master owes to the servant the duty of using ordinary care and diligence in providing for his use sound and safe materials, and such appliances as are reasonably calculated to insure his safety. He is also bound to examine and inspect these things from time to time, and use ordinary care and skill to discover and repair defects in them."

The same doctrine is found in *Morton v. D., B. C. & A. R. Co.* 81 Mich. 423, 46 N. W. 111, and *McDonald v. M. C. R. Co.* 132 Mich. 372, 93 N. W. 1041. We can see no difference between that declaration and the law of this state as shown in *Yazdzewski v. Barker,* 131 Wis. 494, 111 N. W. 689; *Czapinski v. Thomas F. Co.* 158 Wis. 635, 149 N. W. 477, and many other cases; and, tested by the rule common to both states, it was in this case for the jury to determine whether that duty of the master had been breached.

On this question of proximate cause it is urged that there were a number of ways under the testimony by which the log may have become loose and caused the injury and that the jury must necessarily have indulged in mere speculation in making the finding that they did; but it must suffice to say that although the testimony is somewhat indefinite and meager as to what took place at the precise time of the injury, yet there is sufficient in the record to support the finding that it was that precise cause as indicated in the finding, and therefore not some other, that proximately caused the injury, and we cannot now disturb that finding.

One Thompson, a straw boss for defendants, having charge of the skidding operation, hired plaintiff and six other men at De Pere, Wisconsin, to work in the woods. Thompson testifies that he was not employed or authorized by defendants to hire plaintiff or any of these men for them, but that he was asked to do so for one Burdeau, who had a sawing con-

tract under defendants. On his return from De Pere with the seven men the plaintiff and one other were left to work for Cherf, who kept the first camp reached by them. One or more of the others went to work for defendants and several for Burdeau. Subsequently plaintiff did work directly for defendants. There seems also to have been more or less shifting of the men from camp to camp. Under the specific objection that Thompson's authority had not been shown, the court permitted the plaintiff and one other witness to testify that at the time Thompson hired plaintiff and the others at De Pere he told them that they were to work for defendants. The objection was perhaps well taken, but in view of the situation at the close of the trial when the court and jury had for consideration the entire circumstances, the acceptance and retention by defendants of some of the men hired by Thompson, the nature of his employment, the admissions in defendants' answer, their failure to testify to the contrary, and the insuring of all these men by defendants, we cannot say that the error was material or sufficient to reverse.

The other objections to the admission of evidence are not of sufficient importance to require discussion.

*By the Court.*—The order allowing defendants to defend and the judgment are each affirmed.